UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 3:19-mj-23139-AHG-DMS |
|---|---|
| Plaintiff, | **ORDER:** |
| v. | |
| AGUSTINA ZEFERINO-DE JESUS, | **(1) DENYING MOTION TO DISMISS THE COMPLAINT;** |
| Defendant. | |
| | **(2) DENYING MOTION TO COMPEL DISCOVERY;** |
| | **(3) DEFERRING RULING ON MOTION TO SUPPRESS STATEMENTS UNTIL TRIAL; and** |
| | **(4) GRANTING MOTION FOR LEAVE TO FILE FURTHER MOTIONS** |
| | **[ECF No. 23]** |

Before the Court are Defendant's consolidated motions to: 1) dismiss the complaint; 2) preserve evidence and compel discovery; 3) suppress statements; and 4) grant leave to file further motions. ECF No. 23. The Court took the matters raised in the Motion under submission after oral argument on October 8, 2019. ECF No. 25. Having considered the

parties' papers and their argument, the Court enters the following Order:

## I. BACKGROUND

Defendant is charged in the Complaint with violating 8 U.S.C. § 1325(a)(1), which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall [be guilty of a misdemeanor]." *See* ECF No. 1. The Government alleges that on July 31, 2019, a United States Customs and Border Patrol ("Border Patrol") agent encountered Defendant attempting to conceal herself in an area one mile north of the United States/Mexico border and approximately 22 miles east of the Tecate, California Port of Entry. *Id.* at 2. The Government alleges that during the agent's immigration inspection, Defendant stated that she is a citizen of Mexico, without any immigration documents allowing her to enter or remain in the United States legally. The agent placed Defendant under arrest, and took her to the Border Patrol station for processing. *Id.*

Defendant's case has proceeded under the "Streamline" process, which the Department of Justice uses to manage prosecution of misdemeanor charges brought under 8 U.S.C. § 1325. *See United States v. Chavez-Diaz*, No. 18MJ20098 AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018) (describing the Department of Justice's "Operation Streamline" process, as implemented by the Government in this Court). On August 1, 2019, Defendant was brought to Court for her initial appearance. ECF No. 5. Defendant met with an attorney on the ground floor of the Federal Building that morning before her appearance. Defendant was shackled at her legs during that meeting and during her initial appearance in Court. ECF No. 23-1 at 2. At her initial appearance, the Court arraigned Defendant, appointed Federal Defenders to represent her, and set conditions of pretrial release over the Government's oral motion to detain her. ECF No. 5. Defendant appealed the pretrial release conditions, and Judge Dana M. Sabraw modified them on August 14, 2019, to permit Defendant to travel to or reside in the State of Washington. ECF No. 16. Defendant was released on bond on August 14, 2019. ECF No. 17.

On September 17, 2019, Defendant filed the present consolidated motion seeking

various forms of relief, including dismissal of the Complaint. ECF No. 23. Defendant's motion to dismiss is based largely on the argument that the Court should have managed her case through the Central Violations Bureau ("CVB"). As described in Defendant's Motion, the CVB process is used to prosecute violations of certain federal laws, and violations of certain state laws that occur on federal property. *See* ECF No. 23-1 at 3-4. Defendants who are prosecuted through the CVB are rarely detained for more than a few hours. They receive a notice to appear instead. At their initial appearance, they have the opportunity to meet with an attorney who can help them negotiate a disposition. CVB defendants are also typically able to avoid any appearance through payment of a fine.

In addition to seeking dismissal of the Complaint, Defendant moves the Court (1) to order the United States the preserve and produce certain requested evidence based on the contention that the evidence is material to preparing the defense under Fed. R. Crim. P. 16(1)(E)(i), and (2) to suppress Defendant's statements. The Court will address the Motion to Dismiss before turning to the other motions.

**II.　DISCUSSION**

　　**A. MOTION TO DISMISS**

Defendant moves to dismiss the Complaint on six grounds: (1) prosecution of Defendant using the Streamline process rather than through CVB violates equal protection; (2) prosecution of Defendant using the Streamline process rather than through CVB violates principles of selective prosecution and selective enforcement; (3) prosecution of Defendant using the Streamline process rather than through CVB violates procedural and substantive due process; (4) Congress violated the non-delegation doctrine when it enacted 8 U.S.C. § 1325(a)(1); (5) Congress violated the Due Process Clause's prohibition on vague laws when it enacted 8 U.S.C. § 1325(a)(1); and (6) the Complaint fails to allege all the elements of the charged offense.

The Court addresses each of Defendant's arguments below.

　　　　**1.　　Equal Protection**

First, Defendant argues that the Government violates the Equal Protection Clause of

the United States Constitution by processing defendants charged with a misdemeanor violation of 8 U.S.C. § 1325 under the Streamline process, rather than through the CVB process. Because they are punishable by no more than six months, § 1325 offenses are classified as Class B misdemeanors, which are considered "petty offenses" under federal law. See 18 U.S.C. §§ 19, 3559(a)(7). Other petty offenses, as well as some felonies, are prosecuted through CVB. *See, e.g.*, ECF No. 23, Ex. G (reflecting the CVB docket sheet for October 10, 2018). Thus, Defendant argues that the Government is treating similarly situated defendants differently on the basis of alienage, in violation of the Equal Protection Clause, by precluding § 1325 defendants from receiving the "substantial benefits" of the CVB process.

The Equal Protection Clause is part of the Fourteenth Amendment, and states in relevant part that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A threshold issue on which the parties disagree is the standard of review that applies.

Citing *Graham v. Richardson*, 403 U.S. 365 (1971), Defendant contends that the Court must apply strict scrutiny to the Government's decision to process § 1325 defendants outside the CVB process. In *Graham*, the Supreme Court held that the term "person" in the Equal Protection Clause "encompasses lawfully admitted resident aliens as well as citizens of the United States." *Id.* at 371. The Court further held that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." *Id.* at 372. Applying strict scrutiny, the Supreme Court determined that state statutes that imposed a length of residency requirement on lawfully admitted resident aliens, but not United States citizens, violated the Equal Protection Clause.

The Government counters that strict scrutiny is not the proper test for two reasons: (1) the method of prosecution of § 1325 defendants is based on the nature of the charge, not the defendants' alienage; and (2) even if § 1325 distinguishes among persons based on alienage, the rational basis standard of review applies because § 1325 relates to the admission of non-citizens.

The Court agrees with the Government. As other courts in this district have concluded, § 1325 does not create a classification based on alienage that would invoke strict scrutiny. *See, e.g.*, *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1154 (S.D. Cal. 2019); *United States v. Silva-Sosa*, No. 18MJ23270-KSC, 2019 WL 1470868, at *2 (S.D. Cal. Apr. 3, 2019); *United States v. Mazariegos-Ramirez*, No. 18MJ22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *Chavez-Diaz*, 2018 WL 9543024, at *3.[1] The Government's decision to bring § 1325 charges using the Streamline process creates a distinction among defendants based on their alleged criminal activity (attempting to enter or entering the United States unlawfully), not based on alienage. That is, rather than creating a separate court for processing alien defendants with respect to *any* criminal charges brought against them, the Streamline process is only used with respect to charges brought based on alleged unlawful entry in violation of § 1325(a). *See Ramirez-Ortiz*, 370 F. Supp. 3d at 1154 (quoting *United States v. Mendoza-Hinojosa*, 216 F.3d 1085, 2000 WL 429701, at *2 (9th Cir. 2000) (unpublished table case) for the dual proposition that there exists a "distinction between statutes which classify based on alienage and statutes which classify based on criminal actions" and that "imposing different rules on immigrants versus citizens does not in itself create a suspect classification").

Moreover, the Supreme Court has recognized that Congressional acts regarding immigration are "subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). In *Fiallo*, the Supreme Court recognized that "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Id.* (quoting *Mathews v. Diaz*, 426 U.S. 67, 80 (1976)). Even if the Streamline process has a disparate impact on aliens, therefore, it would not be subject to strict scrutiny. *See also United States v. Barajas-Guillen*, 632 F.2d 749, (9th Cir. 1980) ("[C]lassifications among aliens made pursuant to the immigration

---

[1] *Chavez-Diaz* is currently on appeal before the Ninth Circuit, Case No. 18-50391.

laws need only be supported by some rational basis to fulfill equal protection guarantees.").

Applying the proper standard, the Court finds that the Streamline process readily meets the rational basis test. Although the Equal Protection Clause requires all similarly situated persons to be treated alike, "so too, 'the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal alteration and citation omitted). "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* at 223. In analyzing whether the Government's processing of § 1325 defendants through the Streamline process rather than CVB survives rational basis review, the question is whether "the classification at issue bears some fair relationship to a legitimate public purpose." *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting *Plyler*, 457 U.S. at 216). The Court finds that it does.

In finding the test met, the Court here adopts Judge Battaglia's detailed explanation and persuasive reasoning on the same question in *Chavez-Diaz*, 2018 WL 9543024, at *1–4. In addition, the Court notes that requiring the Government to process § 1325 defendants through the CVB would likely prove unworkable given the nature of the charge: unlawful entry into the United States by an alien. As Defendant notes, CVB defendants are not taken into custody. They are allowed to continue living in the United States without restriction, and typically given the option to either pay a fine or appear at a hearing. That would not be a manageable way to address a population of defendants whose alleged offense is entering the United States without authorization.

Addressing the reason just explained, at the hearing on the present motion, Defendant argued that excluding § 1325 defendants from the CVB process on that basis violates the presumption of innocence that is a hallmark of our criminal justice system. According to Defendant, once the Government charges a person with a violation of § 1325, the Government must *presume* that person *is not* an alien, since alienage is an element of a § 1325 offense. Therefore, Defendant reasons, the Government has no basis for prosecuting

Defendant outside the CVB system unless the Government has improperly presumed Defendant's guilt of at least one element of the § 1325 offense—i.e., that she is an alien. However, this argument improperly applies the presumption of innocence to pretrial detention or processing. The presumption of innocence "is a doctrine that allocates the burden of proof in criminal trials . . . ." *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). "[I]t has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." *Id.* The Government's decision not to route § 1325 defendants through CVB—which ensures that § 1325 defendants have a prompt initial appearance, appointment of counsel, and individualized determination regarding detention under the Bail Reform Act—serves a regulatory purpose that is consistent with the Constitution and the Federal Rules of Criminal Procedure. *See United States v. Salerno*, 481 U.S. 739, 748 (1987) (rejecting a similar constitutional challenge to pretrial detention pursuant to the Bail Reform Act because such detention "is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause"); Fed. R. Crim. P. 5; Fed. R. Crim. P. 58(b).

Indeed, in its Response in opposition to the present Motion, the Government's proffered reasons for finding Defendant's § 1325 offense unsuitable for disposition through the CVB include: (1) The CVB is "a national center charged with processing violation notices (tickets) issued and payments received for petty offenses committed on federal property[,]" and thus a criminal misdemeanor offense under Title 8 of the United States Code is not the type of offense for which the CVB calendar was designed, ECF No. 24 at 4 (quoting Central Violations Bureau, www.cvb.uscourts.gov), and (2) Since Defendant was arrested for her alleged offense rather than being given a violation notice, Rule 5 of the Federal Rules of Criminal Procedure entitled Defendant to be taken "without unnecessary delay" before a magistrate judge following her arrest, making it impossible to route her case to the CVB for processing. *Id.* at 5; Fed. R. Crim. P. 5(a)(1)(A). Both of these reasons for processing § 1325 defendants differently than other defendants accused of federal "petty offenses" satisfy the rational basis standard of review.

In her Motion, Defendant preemptively anticipates and rejects as a possible reason that the Government may prosecute § 1325 defendants outside of CVB due to concern that they are less likely to show up for court. *See* ECF No. 23-1 at 4. Defendant provides an exhibit purportedly demonstrating that § 1325 defendants are 8.6 percent more likely to show up for court than CVB defendants. *Id.*; ECF No. 23, Ex. H. However, Defendant's comparison of non-appearances at court hearings by § 1325 defendants and CVB defendants is inapt. The rate of non-appearance by § 1325 defendants only reflects those § 1325 defendants who have secured pretrial release through bail or other conditions. In each of those defendant's cases, a magistrate judge has reviewed their individual circumstances and determined under the Bail Reform Act that conditions of pretrial release can be set to mitigate any flight risk. Nonetheless, a significant percentage of those defendants charged under § 1325 do not appear. The non-appearance rate of that subset of § 1325 defendants does not reflect, nor does it predict, what the non-appearance rate would be if all 1325 defendants were released pretrial and without restrictions, as is the case for CVB defendants. Moreover, as discussed above, the Government offers reasons other than the risk of non-appearance for prosecuting § 1325 defendants outside of CVB, and those reasons meet rational basis review on their own.

Defendant also argues that the Streamline process violates the Equal Protection Clause because it is motivated by invidious racial discrimination, as evidenced by various statements made by President Donald Trump. Because prosecution of § 1325 defendants relates to the entry of foreign nationals, however, the Court's review with respect to President Trump's statements is limited to whether the Streamline process is otherwise "facially legitimate and bona fide." *Trump v. Hawaii*, ___ U.S. ___, 138 S. Ct. 2392, 2420 (2018). This standard is also met for the reasons discussed at length in *Chavez-Diaz*. 2018 WL 9543024, at *1-4. Defendant also acknowledged at the hearing on this motion that similar Streamline processes were already in effect in border districts in Arizona and Texas prior to President Trump's election, negating any suggestion that the Streamline process is based on President Trump's statements.

Therefore, the Court denies the Defendant's motion to dismiss based on the Equal Protection Clause.

### 2. Selective Prosecution and Selective Enforcement

Defendant next argues that the charge against her should be dismissed because the Government is selectively prosecuting § 1325 defendants through the Streamline process, rather than through the CVB process. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The standard for proving a claim of selective prosecution is demanding. *Id.* The executive branch, through the Attorney General and United States Attorneys, has wide discretion in enforcing criminal laws. *Id.* at 464. As long as there is probable cause to support a prosecution, "whether or not to prosecute, and what charge to file or bring before a grand jury," falls squarely within the prosecutor's discretion. *Id.*; *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion").

Defendant does not argue that the fact she was charged under § 1325 reflects selective prosecution. Instead, she argues that the manner in which her charge was processed reflects selective prosecution. It is not clear that the manner of processing, rather than the fact of prosecution, can be the basis of a claim for selective prosecution. Nonetheless, Defendant has not produced any evidence that the § 1325 prosecutions of any similarly situated individuals were processed using any method other than Streamline. Defendant argues that CVB defendants are "similarly situated" because they are charged with "equivalent crimes." However, these defendants are not similarly situated merely because their offenses carry comparable punishments. As discussed above, alienage is an element of the statute itself, and the statute passes constitutional muster due to Congress' "broad power over immigration and naturalization." *Fiallo*, 430 U.S. at 792. To the extent Defendant challenges the Streamline process based on a claim of race discrimination, the

Court also rejects that argument. *See* ECF No. 23-1 at 10 ("[T]he U.S. Attorney's office in the Southern District of California prosecutes people who are of a different alienage, national origin, and race in a separate system than 'similarly situated individuals' charged with equivalent crimes"). To state a case for selective prosecution in a case alleging racial discrimination, "[t]he claimant must show that similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S. at 465. Defendant offers no evidence here that the Government has declined to bring § 1325 charges against similarly situated persons who are of a different race than Defendant—that is, aliens who have entered or attempted to enter the United States outside of an authorized port of entry—or that the Government has prosecuted such defendants through CVB instead.

Defendant's claim that the charge should be dismissed because of selective enforcement also fails. A selective enforcement claim focuses on the investigatory decisions of government agencies, such as the United States Customs and Border Patrol. *United States v. Sellers*, 906 F.3d 848, 853 (2018). Although investigatory decisions of agencies are not entitled to the same deference as prosecutorial decisions by the Attorney General or United States Attorneys, *id.*, Defendant's selective enforcement claim relates solely to how the charge brought against her by the United States Attorney's office was processed. Defendant's claim is not related to any investigatory activity by the Border Patrol or any other federal agency preceding the charge.

The Court denies Defendant's motion to dismiss based on selective prosecution and selective enforcement.

### 3. **Violation of Due Process**

Third, Defendant argues that the charge against her should be dismissed because the Government's prosecution of her under the Streamline process violates her rights to substantive and procedural due process under the Fifth Amendment of the United States Constitution.

Government action deprives an individual of substantive due process when it "shocks the conscience," or "interferes with rights 'implicit in the concept of ordered

10

3:19-mj-23139-AHG-DMS

liberty.'" *Salerno*, 81 U.S. at 747 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-36 (1937)). Defendant contends that her right to substantive due process was violated because the Government used the Streamline process, rather than CVB, to prosecute her. However, Defendant does not provide any facts specific to her prosecution to support the argument that any aspect of her arrest, detention, or prosecution shocks the conscience or interferes with rights implicit in the concept of ordered liberty. Although Defendant cites some news stories describing conditions in various Border Patrol facilities, Defendant does not claim that she was detained in any of those facilities, or make any specific claims (other than a vague and conclusory statement that she "suffered through similar conditions") regarding the conditions that existed during her detention in a Border Patrol facility, which lasted less than 48 hours.

Further, Defendant has offered no evidence that application of the Streamline process to Defendant, rather than the CVB process, shocks the conscience. Her arrest and detention were supported by a showing of probable cause, which was reviewed and approved by a magistrate judge. Following her detention, she was brought to the federal building, where she met with an attorney. A magistrate judge appointed counsel to represent her and issued a Pretrial Release Order. ECF No. 5. A district judge heard her appeal of that Pretrial Release Order, and modified it to allow her a broader range of travel during her release. ECF No. 16. None of these procedures shocks the conscience.

Defendant's claim that her right to procedural due process was violated by the Streamline process also fails. A procedural due process analysis considers three factors: (1) the "private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Once again, without more specific information concerning Defendant's arrest and

11
3:19-mj-23139-AHG-DMS

detention, the Court cannot take at face value Defendant's contention that the individual interest at stake is "substantial" due to the "traumatizing experience of being held in custody in substandard conditions[.]" ECF No. 23-1 at 12. To be sure, the liberty interest that is implicated when an individual is detained by the Government is substantial. But that interest must be weighed against the Government's interest, and as discussed above, the Government has put forth substantial reasons why processing § 1325 defendants through the substitute process of the CVB would not be practicable. Further, the procedures that have been put into place through the Streamline process adequately protect against the risk of an erroneous deprivation of that interest. Those procedures include a probable cause review to support detention, appointment of counsel, and consideration of pretrial release conditions under the Bail Reform Act. Therefore, Defendant's procedural due process claim does not establish a constitutional violation under the *Mathews* balancing test.

Therefore, the Court denies the Defendant's motion to dismiss based on the Due Process Clause.

### 4. Violation of the Non-Delegation Doctrine

Defendant next argues that the § 1325 charge against her should be dismissed under the non-delegation doctrine because Congress delegated its core legislative functions to the Executive Branch by allowing "immigration officers" to determine the times and places when an alien can lawfully enter the United States. The non-delegation doctrine generally forbids Congress from transferring "powers which are strictly and exclusively legislative" to other branches of government. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (citation omitted). Defendant claims that immigration officials have "boundless discretion" to designate times and places for entry, and that the statute does not provide any intelligible principle to guide this discretion. ECF No. 23-1 at 18.

In *United States v. Nunez-Soberanis*, No. 18cr4781-MDD, 2019 WL 4141265 (S.D. Cal. Aug. 30, 2019), another court in this district rejected the very same argument, reasoning as follows:

> Defendant attempts to read into the statute a broader delegation than actually

> occurred by arguing that any individual immigration official can designate any piece of land as a place for entry. Not so. Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales-Vasquez*, 931 F.3d 944, 946 (9th Cir. 2019); *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 CFR § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a whim" is in direct conflict with Congress's clear statutory scheme.

*Id.* at *2. This Court agrees. Contrary to Defendant's argument, § 1325's delegation to immigration officers to designate time and place of lawful entry is not "boundless" but is instead significantly constrained.

Congress's delegation of the duty to designate the time and place for lawful entry of aliens also does not expand the scope of criminal liability under § 1325. Opening or closing ports of entry does not change the conduct that leads to criminal liability under § 1325. Closing ports or restricting hours of operation may make it more cumbersome for aliens to enter legally, but it does not create new or different criminal liability.

Therefore, the Court denies Defendant's motion to dismiss based on the non-delegation doctrine.

### 5. Vagueness

Fifth, Defendant argues the charge against her should be dismissed because 8 U.S.C. § 1325 is void for vagueness. A statute can be impermissibly vague in either of two circumstances: (1) the statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or (2) the statute "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Defendant argues that § 1325 is impermissibly vague because it permits immigration officers "unbounded" discretion to decide what places to designate for lawful entry. As discussed above, this is not correct. Individual Border Patrol

agents cannot designate ports of entry on a "whim." Section 1325 clearly delineates the conduct that it prescribes, and is not impermissibly vague.

Therefore, the Court denies Defendant's motion to dismiss based on vagueness.

### 6. Failure to Allege All Elements of Section 1325

Lastly, Defendant argues that the charge should be dismissed because the Government failed to allege two elements of § 1325 in the charging document, namely: (1) that Defendant attempted to enter the United States with the purpose, i.e., conscious desire, to enter the United States at a non-designated time and place; and (2) that Defendant knew she was an alien when she attempted to enter the United States. At oral argument, the Government stated it would file a Superseding Information adding allegations that the Defendant attempted to enter the United States at a non-designated time and place. There is, therefore, no remaining dispute as to that element.

With respect to the second element, the Court disagrees that knowledge of alienage is an element of a charge under § 1325. Defendant relies in part on *Rehaif v. United States*, 139 S. Ct. 2191 (2019) to make this argument. *Rehaif*, however, is distinguishable. In *Rehaif*, the Supreme Court held that a defendant can be convicted of possession of a firearm by an alien who is illegally or unlawfully present in the United States under 18 U.S.C. § 922(g) only if the Government shows that the defendant knew of his illegal or unlawful immigration status. *Rehaif*, 139 S. Ct. 2196. The Court's interpretation of § 922(g) was governed by the overall statutory scheme, which includes 18 U.S.C. § 924(a)(2). Section 924(a)(2) expressly provides for punishment of a defendant who "knowingly violates" § 922(g). There is no similar express requirement in 8 U.S.C. § 1325, however, that a violation be "knowing."

*Rehaif* does address the general standard for interpreting the *mens rea* requirement for an element of a criminal statute. *Id.* at 2195. The "longstanding presumption" is that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 74 (1994)). However, unlike the statute at

issue in *Rehaif*, the element of alienage in a § 1325 charge does not criminalize "otherwise innocent conduct." *See Nunez-Soberanis*, 2019 WL 4141265, at *6. The conduct that § 1325 criminalizes is attempting to cross the border outside the port of entry, free from official restraint. *See, e.g.*, *United States v. Argueta-Rosales*, 819 F.3d 1149, 1151 (9th Cir. 2016); *United States v. Lombero-Valdovinos*, 429 F.3d 927, 929 (9th Cir. 2005). Any person, whether a United States citizen or an alien, who engages in such conduct violates the laws of the United States. *Nunez-Soberanis*, 2019 WL 4141265, at *6 (citing 19 U.S.C. § 1459(a)). Therefore, the Government does not need to prove that a defendant knew he or she was an alien to obtain a conviction for violating 8 U.S.C. § 1325(a)(1).

Defendant also argues that a defendant who believes he or she is a United States citizen at the time of the alleged offense cannot be found guilty of a violation of 8 U.S.C. § 1325(a)(1) because "'a defendant should be treated in accordance with the facts as he supposed them to be,' not as they actually are." ECF No. 23-1, at 24 (quoting *United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir. 1978)). *Quijada* does not stretch as far as Defendant would like. The issue in *Quijada* was whether the defendant, who had the intent to distribute cocaine, could avoid conviction because the substance he distributed was not in fact cocaine. *Id.* at 1255. A defendant can be convicted of attempted illegal entry under § 1325 if he or she has the specific intent to enter the country free from official restraint. *United States v. Lombera-Valdovinos*, 429 F.3d 927, 929 (2005). *Quijada* cannot be plausibly read to hold that a defendant could avoid conviction under § 1325 if he or she had the specific intent to enter the country free from official restraint, merely because the defendant had a mistaken belief that he or she was not an alien at the time of the offense.

The Court denies Defendant's motion to dismiss based on failure to allege all elements of § 1325.

In sum, the Court rejects all of Defendant's arguments underlying her Motion to Dismiss the Complaint.

### B. MOTION FOR PRESERVATION AND PRODUCTION OF DISCOVERY

Next, Defendant moves the Court for an order to compel the Government to produce certain categories of discovery. On December 20, 2019, the Court granted in part the Government's *ex parte* Application concerning some of the information at issue in Defendant's motion to compel. ECF No. 29. Thus, the only category of discovery that remains outstanding is discovery regarding any involvement by the United States military in Defendant's arrest.

The Government denies that the military participated in Defendant's arrest, but objects to any discovery as to whether the United States military placed the ground sensors that were activated and led to Defendant's arrest. The Government argues that this information is not relevant because the person who placed the ground sensor was not "involved in" Defendant's arrest, and that a qualified privilege applies regarding the placement of the ground sensor.

The Court agrees with the Government. In *United States v. Klimavicius-Viloria*, 144 F.3d 1249 (9th Cir. 1998), the Ninth Circuit held that the Posse Comitatus Act and regulations are not violated by any military involvement in an arrest. There, Navy personnel boarded a ship that was being investigated for transportation of narcotics and provided support to law enforcement who were handling the investigation. The Navy personnel helped stabilize the ship, showed the Coast Guard how to use the equipment on board, helped transfer the defendants, supervised the defendants, and towed the ship to the United States. *Id.* at 1259. The Navy personnel did not participate in searching the ship, or the arrest or interrogation of her crew. *Id.* The court found that this assistance was "properly indirect" and did not violate the Posse Comitatus Act. *Id.* Applying the same reasoning, the Court finds that even if the United States military had some role in placing the ground sensors, that would be at most indirect assistance that is too tenuous to violate the Posse Comitatus Act.

The Court further finds that the motion should be denied because this information

would fall within the qualified government privilege not to disclose investigative techniques. *See United States v. Roviaro*, 353 U.S. 53, 60 (1957); *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986) (holding that the qualified privilege applies to "the nature and location of electronic surveillance equipment.").

### C. MOTION TO SUPPRESS

The Court **DEFERS** ruling on Defendant's motion to suppress her statements. The Court will hear further argument and rule on Defendant's motion to suppress at the date of trial, when it is clear which statements the Government intends to offer.

### D. MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Finally, Defendant moves for leave to file further motions. Defendant's request is general, referring to no specific motion Defendant anticipates filing. See ECF No. 23-1 at 36. The Court is unaware of any authority that would limit Defendant's right to file further motions in this case, and the Government does not oppose the request. Therefore, the Court **GRANTS** the motion for leave to file further motions.

### III. CONCLUSION

For the reasons sets forth above, the Court **DENIES IN PART, GRANTS IN PART**, and **DEFERS IN PART** Defendant's Consolidated Motion (ECF No. 23). Specifically, the Court (1) **DENIES** Defendant's Motion to Dismiss the Complaint; (2) **DENIES** Defendant's Motion to Compel Discovery, except to the extent that such Motion was previously granted by way of the Court's ruling on the Government's *ex parte* Application (ECF No. 29); (3) **DEFERS** ruling on Defendant's motion to suppress statements; and (4) **GRANTS** Defendant leave to file further motions.

**IT IS SO ORDERED.**

Dated: January 7, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge